**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Michelle Bland, | ) | Civil Division |
| | ) | |
| Plaintiff, | ) | No. |
| v. | ) | |
| | ) | |
| Modaxo Traffic Management USA Inc., | ) | |
| Constellation Software Inc., DBA Elovate, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**COMPLAINT**

AND NOW COMES Plaintiff Michelle Bland ("Plaintiff," "Ms. Bland," or "our client"), individually by and through the undersigned counsel, and brings this Complaint seeking legal and equitable relief for disability discrimination, failure to accommodate, retaliation, interference with federally protected medical leave rights, and wrongful termination in violation of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008 (collectively, the "ADA"), the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and pendent state law claims arising under the provisions of the Texas Commission on Human Rights Act ("TCHRA") stating as follows:

**JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. The Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

1

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein occurred in Houston, Texas, within the Southern District of Texas.

3.      Plaintiff timely exhausted all administrative remedies required for her claims under the Americans with Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA") by filing Charge Number 460-2025-05188 on January 30, 2025, with the United States Equal Employment Opportunity Commission ("EEOC") after Plaintiff was wrongfully terminated on September 24, 2024 by Constellation Software Inc., d/b/a Elovate. Plaintiff's Charge was dual-filed with the Texas Workforce Commission and is incorporated herein by reference as if fully set forth. On December 22, 2025, the EEOC issued Plaintiff a Dismissal and Notice of Right to Sue letter (the "Right-to-Sue Letter"). Plaintiff has filed this action within ninety (90) days of receipt of the Right-to-Sue Letter.

4.      Plaintiff's claims under the Family and Medical Leave Act ("FMLA") do not require administrative exhaustion, and Plaintiff is entitled to bring her FMLA interference and retaliation claims directly in this Court pursuant to 29 U.S.C. § 2617.

5.      At all relevant times, Defendant Modaxo Traffic Management USA Inc., operating as Elovate and as a division of Constellation Software Inc., was an employer within the meaning of the ADA, FMLA, and TCHRA.

**PARTIES**

6.      Plaintiff Michelle Bland is an individual who, at all relevant times, was employed by Defendant. Plaintiff is a natural person and a citizen of the State of Texas, domiciled in Montgomery County, Texas. Plaintiff appears in this action by and through undersigned counsel

2

and may be served c/o undersigned counsel at 1201 Fannin Street, Suite 202, Houston, Texas, 77002.

7.    At all relevant times, Defendant Modaxo Traffic Management USA Inc. is a corporation organized under the laws of Virginia with its principal place of business in 5060 Spectrum Way Suite 100 Mississauga, Ontario, L4W 5N5.  Modaxo Traffic Management USA Inc. registered agent, United Agent Group Inc, can be served at 425 W Washington St. Suite 4, Suffolk Virginia 23434. Modaxo Traffic Management USA Inc. is located in 5060 Spectrum Way Suite 100 Mississauga, Ontario, L4W 5N5. At all relevant times, Defendant Modaxo Traffic Management USA Inc., operating as Elovate and as a division of Constellation Software Inc., was an employer within the meaning of the ADA, FMLA, and TCHRA. Additionally, Defendant Modaxo Traffic Management USA Inc. and Constellation Software Inc. operated as an integrated enterprise and/or joint employer with respect to Plaintiff's employment and jointly exercised control over employment policies, leave decisions, benefits administration, and termination authority.

**FACTS**

8.  Plaintiff Michelle Bland devoted nearly fifteen (15) years of continuous service to her work in the public safety and automated traffic enforcement sector, including her tenure with Conduent Inc. Prior to the events giving rise to this action, Plaintiff worked in Conduent's Public Safety Solutions business, where she performed proposal development and related functions in support of public-sector clients.

9.  In or around May 2024, Conduent divested its Public Safety Solutions business as part of a corporate transaction in which that business was acquired by an entity operating under the Modaxo division of Constellation Software Inc., doing business as Elovate. As a result

3

of this transaction, Plaintiff's role, duties, and client-facing work continued without interruption.

10. In or around May 2024, Conduent divested its Public Safety Solutions business as part of a corporate transaction in which that business was acquired by Modaxo Traffic Management USA Inc.

11. Following the acquisition, the Public Safety Solutions business continued operating without interruption under new ownership, doing business as Elovate. The business continued to provide automated traffic enforcement and related services to municipal and governmental clients.

12. Plaintiff's employment was not interrupted as a result of the transaction. Plaintiff continued performing the same proposal management and sales support duties she had performed prior to the acquisition. Her role, job responsibilities, and line of business remained materially the same.

13. The workforce supporting the Public Safety Solutions division remained substantially intact following the acquisition. A significant majority of employees in Plaintiff's division transitioned to employment with Defendant.

14. Supervisory personnel and operational leadership associated with the Public Safety Solutions business also transitioned to Defendant.

15. The services, clients, technology platforms, and operational methods of the Public Safety Solutions business remained materially consistent following the acquisition. Following the divestiture, Conduent no longer operated the Public Safety Solutions business.

16. Plaintiff did not resign, was not terminated, and did not experience a voluntary separation from employment in connection with the transaction. Instead, Plaintiff continued

4

performing the same or substantially similar work she had performed prior to the acquisition, using the same skills, experience, and institutional knowledge developed during her tenure with Conduent.

17. At all relevant times following the acquisition, Plaintiff continued working remotely, as she had while working for Conduent, and remained engaged in the same line of business and services supporting automated traffic enforcement and public safety solutions.

18. Following the acquisition, Plaintiff continued performing proposal-related duties associated with the Public Safety business. Plaintiff's day-to-day responsibilities, professional role, and working conditions remained materially consistent with those she had held prior to the transaction.

19. Although Defendant later treated Plaintiff as having newly commenced employment for purposes of leave eligibility, Plaintiff's work responsibilities and continuity of service were not interrupted by the acquisition.

20. At no time prior to Plaintiff's medical leave did Defendant issue Plaintiff any written discipline, performance improvement plan, or notice suggesting that Plaintiff's employment status or tenure had reset as a result of the transaction.

21. Shortly after the corporate acquisition, Plaintiff began experiencing serious medical issues. On or about May 10, 2024, Plaintiff became ill with strep throat and tonsillitis. Despite her illness, Plaintiff continued performing her job duties. Plaintiff worked through May 14, 2024, and took one sick day on May 15, 2024, when she was physically unable to get out of bed.

22. Following that date, Plaintiff resumed working and continued performing her duties despite recurring illness, physical exhaustion, and increasing stress. Plaintiff made good-faith

efforts to meet her professional obligations while managing her health and did not request extended leave during this period.

23. On June 20, 2024, Plaintiff experienced a significant deterioration in her health and notified Defendant that she was unable to perform her job functions due to illness. That same day, Plaintiff attended an urgent appointment with her treating psychiatrist, who advised that Plaintiff needed time away from work to address the severity of her mental health condition. Plaintiff's psychiatric medications were adjusted at that time.

24. Plaintiff promptly notified Defendant of her condition and sought leave from work. Plaintiff requested leave under the Family and Medical Leave Act ("FMLA"). Defendant denied Plaintiff's request on the basis that Plaintiff had not completed twelve (12) months of service following the corporate acquisition.

25. After Defendant denied her request for FMLA leave, Plaintiff applied for Short-Term Disability ("STD") benefits under Defendant's disability plan administered by Lincoln Financial Group. Plaintiff's STD leave was approved beginning on or about June 20, 2024, based on medical documentation provided by her treating providers.

26. Plaintiff's STD leave was approved and extended in rolling increments as Plaintiff continued treatment and submitted updated medical documentation. At no time did Lincoln Financial deny Plaintiff's STD benefits for lack of medical support.

27. Throughout this period, Plaintiff remained under active medical care and complied with all documentation and reporting requirements.

28. While on approved STD leave, Plaintiff was required to pay the full cost of her medical insurance premiums in order to maintain coverage. Because Plaintiff was not receiving a

paycheck during her leave, Defendant required Plaintiff to make direct payments for her benefits rather than payroll deductions.

29. Plaintiff paid approximately $900 per month out of pocket to continue her health insurance coverage during her medical leave.

30. In late June 2024, Plaintiff suffered another recurrence of strep infection and remained ill for approximately two weeks while taking multiple prescribed medications. Plaintiff continued working with her psychiatrist to address her mental health condition, and her STD leave was extended based on medical documentation.

31. On or about August 6, 2024, Plaintiff was evaluated by an ear, nose, and throat specialist and again diagnosed with strep throat. Bloodwork revealed a reactivated Epstein-Barr Virus, which significantly worsened Plaintiff's symptoms and made it difficult for her to perform basic daily activities.

32. Based on these findings, Plaintiff's ENT physician recommended surgical intervention to address the recurrent infections.

33. Plaintiff's ENT physician initially scheduled a tonsillectomy and turbinate reduction surgery for August 22, 2024. However, the surgery was postponed due to Plaintiff's Epstein-Barr Virus diagnosis.

34. By the end of August 2024, Plaintiff's condition further deteriorated, and she began experiencing high fevers. On September 1, 2024, Plaintiff was diagnosed with COVID-19, which required additional recovery time and delayed her surgery due to hospital protocols requiring a COVID-free period prior to elective procedures.

35. Throughout her medical leave, Plaintiff remained in regular communication with Defendant regarding her condition and progress. Plaintiff provided updates concerning her diagnoses, treatment, and anticipated recovery timeline.

36. In late August 2024, Plaintiff advised Defendant that she anticipated returning to work around September 30, 2024, following recovery and surgical treatment. Plaintiff also inquired whether a part-time return might be possible as a transitional measure while she continued healing.

37. Defendant responded that employees could not work while on approved STD leave and that salaried employees were not permitted to work part-time. Defendant did not engage in further discussion regarding alternative accommodations.

38. On September 19, 2024, Plaintiff advised Defendant that she was making progress in diagnosis and treatment and proposed a return-to-work date of October 9, 2024. Shortly thereafter, Plaintiff informed Defendant that she would require tonsil surgery, which might delay her return by a few days, and that she would provide firm dates once scheduled.

39. On September 24, 2024, Defendant requested a telephone call with Plaintiff. During that call, Defendant informed Plaintiff that she had been "out sick too long" and that her employment was being terminated effective immediately.

40. At the time of termination, Plaintiff remained on approved STD leave, was under active medical care, and had advised Defendant of her anticipated return to work following surgery.

41. Defendant issued formal separation documentation the following day.

42. Following Plaintiff's termination, Defendant immediately canceled Plaintiff's active medical insurance coverage. Plaintiff did not receive COBRA election materials for several weeks.

43. Plaintiff notified Defendant that her insurance had been canceled and that she had an upcoming surgery. Defendant advised Plaintiff that COBRA materials could take several weeks to arrive.

44. As a result, when Plaintiff underwent her tonsillectomy and turbinate reduction surgery on October 3, 2024, she was treated as an uninsured patient and was required to pay approximately $2,000 out of pocket prior to surgery.

45. Plaintiff complied with all separation requirements, including the return of company equipment.

46. Following surgery, Plaintiff recovered and intended to return to work once medically cleared.

47. Defendant denied Plaintiff's request for job-protected medical leave, required Plaintiff to take disability leave instead, declined to permit any transitional return to work, and terminated Plaintiff's employment while she remained on approved medical leave and under active medical care.

48. On December 22, 2025, Ms. Bland received her Notice of Right to Sue from the United States Equal Employment Opportunity Commission.

49. All administrative remedies have been exhausted.

## COUNT I
### *Michelle Bland v. Modaxo Traffic Management USA Inc., Constellation Software Inc., DBA Elovate,*
**AMERICANS WITH DISABILITIES ACT ("ADA") AND ADA AMENDMENTS ACT ("ADAAA") – DISABILITY DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATION**

50.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

51.     At all times relevant, Ms. Bland was a qualified individual with a disability within the meaning of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, in that she suffered from one or more physical and mental impairments that substantially limited one or more major life activities, including but not limited to immune system function, concentration, sleep, and the ability to work, as well as resulting medical complications.

52.     Ms. Bland was also a qualified individual with a disability because Defendant regarded and perceived her as having a physical and/or mental impairment that substantially limited one or more major life activities.

53.     At all relevant times, Ms. Bland was capable of performing the essential functions of her position with reasonable accommodation, including temporary medical leave and/or a brief transitional return to work. Plaintiff's requested leave was finite and tied to scheduled medical treatment and recovery, not an open-ended or indefinite request. Defendant, however, refused to provide any reasonable accommodation, refused to meaningfully engage in the interactive process, and instead treated Ms. Bland's medical condition as a basis for adverse action.

54.     Ms. Bland possessed the requisite skill, experience, education, and qualifications for her position and had a demonstrated history of strong performance prior to the onset of her medical conditions. Defendant did not issue Ms. Bland any discipline, performance improvement plan, or corrective action prior to placing her on medical leave or terminating her employment.

55.     Rather than engaging in the interactive process as required by law, Defendant terminated Ms. Bland while she remained on approved medical leave, citing the duration of her illness as the reason for discharge.

56.    Defendant's conduct – including refusing reasonable accommodation, failing to engage in the interactive process, and terminating Ms. Bland because of her disability and/or perceived disability – constitutes unlawful discrimination and retaliation in violation of the ADA and ADAAA.

57.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, emotional distress, mental anguish, and other compensatory damages, in an amount to be determined at trial.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra.*

## COUNT II
### *Michelle Bland v. Modaxo Traffic Management USA Inc., Constellation Software Inc., DBA Elovate*
### FAMILY AND MEDICAL LEAVE ACT ("FMLA") – INTERFERENCE

58.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein at length.

59.    At all relevant times, Defendant Modaxo Traffic Management USA Inc., operating as Elovate and as a division of Constellation Software Inc., was an employer covered by the Family and Medical Leave Act, 29 U.S.C. § 2611(4).

60.    Plaintiff was an employee entitled to the protections of the FMLA and suffered from a serious health condition within the meaning of 29 U.S.C. § 2611(11), which rendered her unable to perform the functions of her position and required medical leave.

61.    Plaintiff provided Defendant with timely and adequate notice of her need for medical leave, including notice of her medical diagnoses, treatment, and anticipated return-to-work timeframe.

11

62.     Plaintiff requested leave protected under the FMLA. Defendant denied Plaintiff's request on the stated basis that Plaintiff had not completed twelve (12) months of service following a corporate acquisition, and Defendant refused to credit Plaintiff's prior service with her predecessor employer for purposes of FMLA eligibility.

63.     Plaintiff's medical leave began on or about June 20, 2024. Twelve (12) weeks from that date extended into mid-September 2024. Defendant terminated Plaintiff on September 24, 2024, while Plaintiff remained within her recovery period and before recognizing her statutorily protected leave status.

64.     Defendant's denial of Plaintiff's FMLA leave was based solely on its treatment of Plaintiff as a "new employee" following the acquisition, despite Plaintiff's continuous service, uninterrupted job duties, and ongoing performance of the same or substantially similar work before and after the transaction.

65.     Under the FMLA and its implementing regulations, an employer that acquires a business and continues its operations may be required to credit an employee's prior service for purposes of FMLA eligibility. Defendant was a successor in interest to Plaintiff's predecessor employer within the meaning of the FMLA and its regulations and was therefore required to recognize Plaintiff's prior service. In determining successor status, relevant factors include substantial continuity of operations, workforce, supervisory personnel, services, and the inability of the predecessor to provide relief — all of which were present here.

66.     By denying Plaintiff FMLA leave on the basis of tenure alone, Defendant interfered with, restrained, and denied Plaintiff's exercise of rights guaranteed by the FMLA, in violation of 29 U.S.C. § 2615(a)(1).

12

67.     As a direct consequence of Defendant's unlawful denial of FMLA leave, Plaintiff was forced to take short-term disability leave without job-protected status, depriving her of the statutory protections afforded by the FMLA.

68.     Defendant subsequently terminated Plaintiff's employment while she remained on medically supported leave, citing the length of her absence as the basis for termination.

69.     Had Defendant properly recognized Plaintiff's eligibility for FMLA leave and granted the statutorily mandated twelve (12) weeks of job-protected leave, Plaintiff's medical leave and recovery period would have fallen well within the protections of the FMLA, and Plaintiff would not have been terminated for taking protected leave.

70.     Defendant's actions constitute unlawful interference with Plaintiff's rights under the FMLA.

71.     As a direct and proximate result of Defendant's interference with her FMLA rights, Plaintiff has suffered damages including, but not limited to, lost wages, lost benefits, out-of-pocket medical expenses, emotional distress, and other compensatory damages, in an amount to be determined at trial.

WHEREFORE, Plaintiff seeks all relief available under the FMLA, including back pay, front pay, liquidated damages, interest, attorney's fees, costs, and all other relief to which she is entitled, as set forth more fully in the ad damnum clause of this Complaint.

## COUNT III
### *Michelle Bland v. Modaxo Traffic Management USA Inc., Constellation Software Inc., DBA Elovate*
### FAMILY AND MEDICAL LEAVE ACT ("FMLA") – RETALIATION

72.     Plaintiff Michelle Bland incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

73.     Plaintiff engaged in protected activity under the FMLA when she requested medical leave, provided medical documentation, and sought job-protected leave for a serious health condition.

74.     Defendant had actual knowledge of Plaintiff's protected activity, including her request for FMLA leave, her medical condition, her ongoing treatment, and her anticipated return-to-work timeframe.

75.     Defendant subjected Plaintiff to adverse employment actions, including but not limited to denying her request for FMLA leave, forcing her onto non-protected short-term disability leave, and terminating her employment.

76.     Defendant's decision to terminate Plaintiff occurred shortly after Plaintiff requested protected medical leave, continued to provide medical updates, and communicated specific anticipated return-to-work dates.

77.     Defendant explicitly cited the length of Plaintiff's medical absence as the reason for her termination.

78.     The close temporal proximity between Plaintiff's protected activity and Defendant's adverse actions, together with Defendant's stated rationale for termination, establishes a causal connection between Plaintiff's exercise of FMLA rights and Defendant's retaliatory conduct.

79.     Defendant's actions were willful and intentional, taken in retaliation for Plaintiff's attempt to exercise her rights under the FMLA.

80.     As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages including lost wages, lost benefits, out-of-pocket medical expenses, emotional distress, and other compensatory damages.

WHEREFORE, Plaintiff seeks the damages, including punitive damages under the TCHRA, set forth in the *ad damnum* clause of this Complaint, *infra.*

## COUNT IV

### TEXAS COMMISSION ON HUMAN RIGHTS ACT ("TCHRA") – DISABILITY DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATION

81.    Plaintiff Michelle Bland incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

82.    At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the TCHRA, or was regarded as such by Defendant.

83.    Plaintiff was capable of performing the essential functions of her position with reasonable accommodation, including temporary medical leave and/or a brief transitional return to work following treatment.

84.    Defendant failed and refused to provide reasonable accommodation and failed to engage in a good-faith interactive process as required by the TCHRA.

85.    Defendant subjected Plaintiff to adverse employment actions, including denying job-protected medical leave, refusing accommodation, and terminating her employment because of her disability and/or perceived disability.

86.    Plaintiff further engaged in protected activity under the TCHRA by requesting accommodation and medical leave, and Defendant retaliated against her for engaging in such protected activity.

87.    Defendant's conduct was intentional, knowing, and carried out with reckless indifference to Plaintiff's statutorily protected rights.

15

88.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages including lost wages, lost benefits, mental anguish, emotional distress, and other compensatory damages recoverable under the TCHRA and such relief to which Plaintiff may be justly entitled.

## PRAYER FOR RELIEF and DEMAND FOR JURY

WHEREFORE, Plaintiff demands judgment against Defendant and damages in excess of $75,000 as follows:

a. That Plaintiff be awarded actual, consequential, and compensatory damages sufficient to make Plaintiff whole, including but not limited to back pay, front pay (or reinstatement in lieu thereof), lost wages, lost benefits, out-of-pocket medical expenses, and other economic losses, together with pre-judgment and post-judgment interest, as authorized under the ADA, ADAAA, FMLA, and TCHRA, in amounts to be determined at trial;

b. Compensatory damages for mental anguish, emotional distress, inconvenience, loss of enjoyment of life, and other non-economic injuries caused by Defendant's unlawful discrimination, retaliation, failure to accommodate, interference with protected leave, and wrongful termination, as permitted by law;

c. Liquidated damages under the Family and Medical Leave Act, 29 U.S.C. § 2617(a)(1)(A)(iii), for Defendant's willful violations of Plaintiff's FMLA rights;

d. Nominal damages, where appropriate, to vindicate Plaintiff's statutory rights;

e. Punitive damages under the ADA/ADAAA and TCHRA, in an amount sufficient to punish Defendant for its intentional, knowing, or recklessly indifferent conduct and to deter similar unlawful conduct in the future;

f. Declaratory relief declaring that Defendant's acts and practices violated the Americans with Disabilities Act, the ADA Amendments Act, the Family and Medical Leave Act, and the Texas Commission on Human Rights Act;

g. Equitable relief, including but not limited to reinstatement, front pay in lieu of reinstatement, policy changes, training, and other injunctive relief necessary to prevent future violations of the law;

h. Compensation for lost employee benefits, including but not limited to health insurance coverage, retirement contributions, profit-sharing, pension benefits, and other fringe benefits Plaintiff would have received absent Defendant's unlawful conduct;

i.  Reasonable attorney's fees, expert fees, and costs of court as authorized by the ADA, FMLA, and TCHRA;

j.  Pre-judgment and post-judgment interest as allowed by law;

k.  That Plaintiff be awarded such further relief as deemed to be just and proper; and

l.  All other legal and equitable relief to which Plaintiff may be justly entitled under federal and state law.

m.  Plaintiff demands a trial by jury on all issues so triable.


Date:   February 23, 2026                          Respectfully submitted,


*/s/ Alvin Adjei*
Alvin Adjei
Texas Bar: 24082259
HKM Employment Attorneys LLP
1201 Fannin St., Suite 202
Houston, TX 77002
Telephone: 832-356-2684
Fax: 832-356-2684
aadjei@hkm.com
**ATTORNEY FOR PLAINTIFF**